Robert Evans Mahler, Pro Se
P.O. Box 7658
Salem, Oregon 97303
(503)589-4878

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Robert Evans Mahler; | ) Civil Action No.   CV'06   552 BR |
| Salem Table Tennis Club, Inc.; | ) |
| Plaintiffs, | ) COMPLAINT |
| v. | ) Complaint in Tort (Federal Tort |
| | ) Claims Act 28 U.S.C. §1332 & |
| Bernard F. Bednarz Jr., | ) §2671); 1st, 4th, 5th, and 14th |
| individually and dba | ) Amendment Civil Rights |
| BC Web LLC; Table Tennis Club; | ) Violations; Violations of the |
| City of Salem, Oregon; Salem | ) Americans with Disabilities |
| (Oregon)Police Department; Lyle | ) Act, of U.S.C. Title 18, §1962 |
| Gembala, Individually and as | ) and 1964 (RICO), of Section 1 |
| Deputy Chief of the City of | ) of the Sherman Act, and other |
| Salem (Oregon) Police | ) Violations of State and Federal |
| Department; Does 1-20, | ) Law. |
| Defendants | ) Demand for Jury Trial |

## PRELIMINARY STATEMENT

PLAINTIFFS, complaining of the Defendants, allege as follows:

This is a combined action, to include Civil Rights Violations by Defendants of the Americans with Disabilities Act, redress of the deprivation of rights and privileges secured to Plaintiffs by the Constitution of the United States of America, First, Fourth, Fifth, and Fourteenth Amendments of the Bill of Rights, providing for equal rights of citizens of all persons within the jurisdiction of the United States, Breech of Fiduciary Duty, claims of Defamation, Conspiracy, Conversion, Negligence, Gross Negligence, Intentional Infliction of Emotional Distress, Intimidation, Libel, Retaliation, Common Law Fraud, Tortuous Interference with a Business Relationship, Tortuous Interference with an Economic Relationship, Bribery, Due Process violations, Civil Racketeering, Common Law Fraud, Violation of Section 1 of the Sherman Act, and violations of the By-laws of the Salem Table Tennis Club, (Inc.).

Defendants, their agents, and employees have subjected Plaintiffs to illegal search and seizure, threats and harassment, invasion of privacy, intentional infliction of emotional distress, and violations of their civil rights.

## PARTIES

1.     Plaintiff, Robert Mahler (Mahler), and Kris Yates, are residents of Marion County, State of Oregon.  The matter in controversy exceeds fifty thousand dollars ($50,000), exclusive of interest, and costs.

2.     Plaintiff, Salem Table Tennis Club, Inc., (Club) is a public non-profit mutual benefit Club, incorporated, organized, and existing under the laws of the State of Oregon and United States of America.

3.     Defendant, Bernard F. Bednarz (Bednarz), was at all times hereinafter mentioned, a past elected official, past employee, past

member, and/or past player of the Salem – Chemeketa Table Tennis Club, a Table Tennis Club not yet titled, and is being sued here as an individual and in any official capacity in either entity.

4.    Defendant, BC WebHost LLC, at all times hereinafter mentioned, is a for profit company owned and operated by Defendant Bednarz.

5.    The Defendants, DOES 1-20, at all times herein relevant, were past elected officials, past employees, past members, and/or past players of the Salem – Chemeketa Table Tennis Club, and/or City of Salem Employees.  They are being sued here, both as individuals, and in any official capacity.  "DOES" is a fictitious name used to designate parties not presently known to Plaintiffs.

6.    Defendant "Table Tennis Club" is a Defendant with no current valid title and may be also termed as one of the Does of Does 1-20.

7. Defendant, Lyle Gembala (Gembala), was at all times hereinafter mentioned the Deputy Police Chief for the City of Salem, Oregon and is being sued here as an individual and in any official capacity as an employee of the City of Salem, Oregon.

8. Defendant, City of Salem, was at all times hereinafter mentioned a municipality operating under the laws of the City of Salem, the State of Oregon, the United States Constitution, and Bill of Rights.

9. Defendant, City of Salem Police Department, was at all times hereinafter mentioned, an agency of the City of Salem, operating under the laws of the City of Salem, the laws of the State of Oregon, and the United States Constitution, and Bill of Rights.

10. The term "Defendants" is used in this Complaint to refer to all Defendants, Bernard F. Bednarz Jr., BC Web LLC, City of Salem, Salem (Oregon) Police Department, Lyle Gembala, and Does 1-20 collectively and individually.

## FACTS

11.   Plaintiff Mahler suffers disabilities from advanced osteo-arthritis and left-sided hemiplegia as the result of a C-3 cervical fracture and left and right knee implant prosthetics.

12.  Plaintiff, Robert Mahler founded the Salem Table Tennis Club on, or about, September 1, 1997 by publishing a copyrighted Web site at www.sunburstech.com/cttc.

13.  Within a month of September 1997, Art Johnson and Joe Badrena, Salem, Oregon community members came forward to offer their aid in founding the Club.

14.  The Club held meetings for the practice of the sport of Table Tennis through May of 2005 on the Salem, Oregon campus of Chemeketa Community College (College).

15.  The Club played at the College in exchange for helping and assisting with campus events and special gatherings.

16.  The College notified the Club on, or about, April 2005 of implementation of intended monthly fees, of approximately $900.00, for allowing the Club to continue playing at the College.

17.  The Club had a constitution, and By-laws, that were associated with the College while the Club players met at the College venue.  The College asked the Club to title the Club Constitution and By-laws "Salem Table Tennis Club"  and "Salem-Chemeketa Table Tennis Club".

18.  The Founders of the Club, Bob Mahler, Joe Badrena, and Art Johnson (Founders) invested their funds, received grants and loans from the College, and utilized community member donations to purchase equipment for the Club.  Club Founders spent Club funds to send Salem community youth to Table Tennis training camps, sponsored tournaments for community members, and the Founders were invited to Table Tennis exhibitions to help promote the sport of Table Tennis.  All activities of the Club Founders were based on a volunteer, no pay, status.

19.   On, or about, July 2005, Plaintiff Bob Mahler signed an
agreement, on behalf of the Club, with the Salem Senior Center
(Center) that would enable the Club to continue play and practice at
the Center.

20.   As co-founder of the Club, Plaintiff Bob Mahler, agreed to a
yearly donation of $200.00 payable to the Center, to offer Table
Tennis at the Center on Mondays at 1:00 p.m., in exchange for the Club
being allowed to play three other days of the week.

21.   The Club is operated as a Community Club, for the use of
community members, has been organized to provide low cost Table Tennis
activities and exercise with discounts for play given to attending
youth and senior citizens.  Cost for play is $2.00 and $1.00 for youth
and seniors.

22. On, or about, February 2006, Defendants attempted to implement By-
laws for the Club in an attempt to usurp and divert the Founders'
original intentions for the Club.

23. On February 21, 2006, the Founders of the Club filed with the
Oregon Division of Corporations to obtain non-profit, mutual benefit,
corporate status for the Club.  The Salem Table Tennis Club, Inc.
Board of Directors are, Bob Mahler, Art Johnson, and Joe Badrena.

24. On, or about, February 14 and March 24, 2006, Defendant Bednarz
and Defendants Does 1-20, violated Plaintiffs Civil Rights by
attempting to prevent them from holding a scheduled meeting of the
Club.

25. On, or about, February 14 and March 24, 2006, Defendant Bednarz
ordered Plaintiff Mahler to leave a Club meeting that was sponsored by
the Club by informing Plaintiff Mahler that Plaintiff Mahler was not
authorized to call or hold a Club meeting.

26. On, or about, March 3, 2006, Defendant Bednarz told Plaintiff Mahler that, as a result of Plaintiff's "knee replacements", and inability to "keep up" with other competitors, Plaintiff Mahler was "not able to compete" and Plaintiff Mahler was restricted from competing at a Table Tennis tournament.

27. On, or about, March 21, 2006, Defendant Bednarz, and Defendants Does 1-20, libeled and defamed Plaintiffs by intentionally publishing malicious inaccuracies, untruths, and errant harmful information concerning Plaintiff's private and marital life, a mental disability of Plaintiff Mahler, and Plaintiff Mahler's physical disabilities.

28. On, or about, February 14 and March 24, 2006, published information about Plaintiff Mahler that, as a result of Plaintiff's "disability, Plaintiff Mahler "was not welcome at a Table Tennis Club" and Plaintiff Mahler was ordered to leave.

29. On, or about, March 21, 2006, Defendant Bednarz, and Defendants Does 1-20, intentionally intimidated Plaintiffs by publishing and threatening criminal prosecution regarding the use of the Club's equipment.

30. On, or about, March 21, 2006, Defendant Bednarz, and Defendants Does 1-20, libeled and defamed Plaintiffs by intentionally publishing malicious inaccuracies, untruths, and errant harmful information concerning Plaintiffs, Plaintiff's association with the Founders of the Club, and the Club itself.

31. On, or about, March 22, 2006, Defendant Bednarz, and Does 1-20, conspired to violate the Plaintiff Mahler's, and Kris Yates', Constitutional rights by telephonically, and via written correspondence, by describing to others that Plaintiffs Mahler's disability was resulting in his and Kris Yates' emotional and marital difficulties at home, and that Plaintiff Mahler would not be allowed to play at the Club due to his mental and physical disabilities.

32. On, or about, March 23, 2006, Defendant Bednarz, and Does 1-20, conspired to abridge Plaintiff's Constitutional rights by meeting and discussing methods of limiting Plaintiff's ability to express freedom of speech and freedom from unreasonable search and seizures.

33. On, or about March 27, 2006, Defendants Bednarz, and Does 1-20, violated Plaintiff Mahler's Constitutional rights by delivering a communication to Plaintiff Mahler revoking Plaintiff Mahler's status in a Table Tennis Club.  Defendant Bednarz states in their communication that Plaintiff Mahler "forego representing the [Table Tennis] club in any capacity" by "resign[ing] your position".  Further, Defendant Bednarz ambiguously wrote "This is not about you and me,..".

34. On, or about April 5, 2006, Defendants Bednarz, Lyle Gembala, City of Salem, Oregon, City of Salem Police Department, and Does 1-20, violated Plaintiff Mahler's Constitutionally guaranteed Civil rights when they conspired to abrogate and deny Plaintiffs Mahler and the Club's right to due process of the law, deny Plaintiff Mahler his personal property, deny the Salem Table Tennis Club, (Inc.) its property, abuse the power and influence of the position of Salem Deputy Chief of Police, influence the outcome of a theft to suit their own purposes, forestall any opportunity for Defendants Mahler and Salem Table Tennis Club, (Inc.) from recovering their property, conspired to seek a criminal action against Mahler, and knowingly, willfully, and corruptly endeavoring to influence, obstruct and impede the due administration of justice.

35. On, or about April 5, 2006, Defendants violated Plaintiff's Constitutional Civil rights when they conspired with Gembala to phone Mahler to intimidate, harass, and threaten him, which caused Plaintiffs to suffer emotional distress.  Additionally, Defendants conspired to embezzle, steal, obtain by fraud and without authority

knowingly convert to the use of a person, not the rightful owner and intentionally misapply, property, valued at least $5,000, owned by, under the case, custody and control of Mahler, the Club, and the Salem Senior Center, also in violation of federal laws.

36. On, or about April 5, 2006, at least two of the Defendants conspired to injure, oppress, threaten, and intimidate Plaintiff while a Citizen of the United States and resident of the State Of Oregon, in the free exercise or enjoyment of his rights or privileges secured to him by the Constitution or laws of the United States.

37. On, or about April 6, 2006, Defendants violated Plaintiff's Constitutional Rights, and the RICO act, by conspiring to deny and abrogate Plaintiff's Constitutionally guaranteed Civil Rights. On this date, Defendant Bednarz wrote to the Salem Senior Center Administrator and provided an outline whereby Defendant Gembala, and Defendant co-conspirators, agreed and conspired that Gembala, ostensibly in exchange for reward, money, and other things of value, would preferentially support Defendants and exert the pressure, intimidation, harassment, and apparent influence of Gembala's position in the Salem Police Department on Plaintiffs. As a personal favor to Defendants, Defendants conspired with Gembala to seek a criminal action against Mahler. Additionally, Bednarz wrote that all Defendants would owe Gembala rewards, money, and other things of value, for Gembala's by-passing standard operating procedures for the Salem Police Department, and providing out of the ordinary help, effort for, and preferential treatment to, Defendants. The connection that links Gembala and Bednarz allowed for Gembala's abuse of power and afforded preferential treatment to all Defendants. Gembala and Bednarz attend the same fraternal organization. Plaintiffs have no such special influence or connections with local Law Enforcement and

must use standard procedures and complaint processes.  No such special
or preferential treatment was available to Plaintiffs.

38. On, or about April 8, 2006, Defendants Salem, Oregon Deputy Chief
of Police Lyle Gembala, Defendants Bednarz, Does 1-20, the  City Of
Salem, Oregon, and the Salem, Oregon Police Department, conspired to
abrogate and deny Plaintiffs Mahler and Salem Table Tennis Club's,
(Inc.) Constitutional rights by "briefing" , or by causing to be
ordered and directions given, to Salem Police Department Officers to
not interfere with the theft of Plaintiff's personal property which
was located at the Salem Senior Center, 1055 Erixon St., Salem,
Oregon.

39. On, or about April 8, 2006, Defendants conspired to use Defendant
Gembala's official position as Deputy Chief of Police to limit and
abridge Plaintiff's Civil Rights.  In further violation of Plaintiff's
Constitutionally guaranteed Civil Rights, Defendant Gembala allowed,
and encouraged, the theft of Plaintiff's personal property by
directing Salem Police Officers to not intercede with the removal of
Table Tennis equipment from the Salem Senior Center.  Salem Police
Officers were directed, by Defendant Gembala and other, as yet unnamed
City of Salem employees, to ignore the theft of Plaintiff's personal
property and to avoid taking any action regarding Plaintiff's desire
to file a theft report with the Salem Police Department.  These
actions were all done intentionally, with the foreknowledge and
complicity, of all Defendants.

40. On, or about April 8, 2006, Defendants conspired to go on the
premises of another for the purpose of depriving, either directly or
indirectly, Plaintiffs of the equal protection of the laws, and of
equal privileges and immunities under the laws.  Further, one or more
of the conspirators did, or caused to be done, an act in furtherance
of the object of the conspiracy.  Plaintiffs were injured in their

persons or property and deprived of having and exercising their rights and privileges of citizens of the United States.

41. On, or about April 8, 2006, Defendants, acting under color of the law, had knowledge that a theft and removal of personal property was about to be done, had the power to prevent the same, and failed to act.

42. On, or about April 11 and 12, 2006, Plaintiff Mahler visited the Salem, Oregon, Police Department to file a theft report regarding the removal of subject personal property from the Salem Senior Center. During this visit Mahler discovered that Defendants further violated Plaintiff's Constitutional Rights by conspiring to deny and abrogate the Plaintiff's attempt to file a police report detailing the theft of personal property by briefing and ordering Salem Police Officers not to interfere with the theft. Plaintiff Mahler inquired of the attending Salem Police Officer and was advised that Deputy Chief Gembala, "is an administrator, he supervises, and he does not make personal investigative calls to citizens in his capacity as Deputy Chief". Plaintiff Mahler asked the Police Officer if the Salem Police Department has an Internal Affairs Department. The Officer responded "Yes, I will get you a complaint form now."

43. From February 2006 through April 2006, Defendants Deputy Chief of Police Lyle Gembala, Defendants Bednarz, Does 1-20, the City Of Salem, and the Salem Police Department, conspired to abrogate and deny Plaintiffs Mahler and Salem Table Tennis Club's, (Inc.) Constitutional rights by conducting a "propaganda campaign" among Plaintiff Mahler's, relatives, former business partners, friends, and acquaintances to spread negative and derogatory information about Plaintiff Mahler. The purpose of these activities was to alienate Plaintiff Mahler from his relatives, friends, and business partners.

44. From February 2006 through April 2006, Defendants Salem, Oregon Deputy Chief of Police Lyle Gembala, Defendants Bednarz, Does 1-20, the City Of Salem, Oregon, and the Salem, Oregon Police Department, conspired to abrogate and deny Plaintiffs Mahler and Salem Table Tennis Club's, (Inc.) Constitutional rights by publicly portraying him in the worst possible manner in order to execute a character assassination of Mahler.  The Defendants discussed apparent embarrassing details of Mahler's private life in a public forum and interfered in Plaintiff Mahler and Kris Yates' relationship with one another.

## VENUE

45. Venue in this District is proper under 28 U.S.C.; 28 U.S.C. Sections 1391 and 1391(e), 42 U.S.C. Sect. 12101(b)(1), 42 U.S.C. Sect. 2000e-5(f) in that the acts of discrimination and conspiracy have taken place in this District, and the Defendants are of, and live in, this District.  Plaintiff Mahler is protected by the ADA as he is a person with a "disability" as that term is defined by the Statute, 42 U.S.C. Sect. 12102(2)(a).  Plaintiff Mahler has a "physical or mental impairment that substantially limits one or more of [his] major life activities."  A purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.".

## JURISDICTION

46. Jurisdiction is conferred on this Court by 28 U.S.C. Sect.1343; Sect. 1331 for civil actions arising under the Constitution and laws of the U.S.; pursuant to 28 U.S.C. Sect. 1343; and 42 U.S.C. Sect. 12133 which incorporates provisions of 29 U.S.C. Sect. 794, for violations of the Constitution of the United States of America;

pursuant to 42 U.S.C. ss 1983, Sect. 1985(3), 1986, and 1988.; Title
II and III of the Americans with Disabilities Act; and the Americans
with Disabilities Act generally.

### Count 1

### VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

47. Plaintiffs repeat and reallege each and every allegation contained
hereinabove as though set forth more fully herein.

48. Plaintiffs allege that Defendants have conspired together and
acted in concert through artifice and misrepresentation to willfully,
wrongfully and unlawfully, with malice, deprive them of their
constitutionally protected right of free speech as guaranteed them
under the First Amendment to the Constitution of the United States.

### Count 2

### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

49. Plaintiffs repeat and reallege each and every allegation contained
hereinabove as though set forth more fully herein.

50. Plaintiffs allege that Defendants have conspired together and
acted in concert through artifice and misrepresentation to willfully,
wrongfully and unlawfully, with malice, deprive them of their
constitutionally protected right to due process and equal protection
under the law as guaranteed them under the Fourteenth Amendment to the
Constitution of the United States.

### Count 3

### Violation of Civil Rights Act, Section 1983, 14th Amendment

51. Plaintiffs repeat and reallege each and every allegation contained
hereinabove as though set forth more fully herein.

52. Section 1983 of the Civil Rights Act provides as follows:  "Every
person, who, under color of any statute, ordinance, regulation, custom
or usage, of any State. . .subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights secured by the Constitution
and laws, shall be liable to the party in an action. . .for redress."
The Fourteenth Amendment to the Constitution guarantees all persons
the "equal protection of the laws."  Section 1983 and the Fourteenth
Amendment prohibit any purposeful discrimination.

53. The Club By-laws include guidelines for qualifying and admitting
community members to the Club.

54. The Club By-laws confer the right for community members to join
the Club.

55. Defendants have intentionally and willfully attempted to deny
Plaintiff Mahler membership in the Club, intentionally and willfully
denied Plaintiff Mahler access to Club events and functions,
intentionally and willfully denied Plaintiff Mahler the right to speak
at Club events and functions, thereby violating Plaintiff's rights as
guaranteed under Sections 1983 of the Civil Rights Act and the First
and Fourteenth Amendments of the United States Constitution.

56. As a direct and proximate result of the wrongful acts of the
Defendants, Plaintiffs suffered intimidation, embarrassment, loss of
Club property, discomfort, and violations of their civil rights.

### COUNT 4

### VIOLATION OF 42 U.S.C. 1983 CIVIL RIGHTS

57.  Plaintiffs repeat and reallege each and every allegation
contained hereinabove as though set forth more fully herein.

58.  The Civil Rights Act of 1871, 42 U.S.C. 1983, provides that
"[e]very person who under color of any statute, ordinance, regulation,
custom, or usage, of any State... subjects, or causes to be subjected,
any citizen of the United States to the deprivation of any rights,'
privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured...."

59.  The United States Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

60.  Plaintiff has a federal constitutional "right" and a right designated by the Club's Articles of Incorporation, and By-laws, to freely partake in Club activities.

61.  Defendants, under color of federal law, state law, "arranged" rules, and non-existent rules, have unreasonably and wrongfully infringed upon, and deprived Plaintiffs of, Constitutionally protected rights.  Defendants have deliberately flouted the law, and have deprived Plaintiffs of rights, privileges, and immunities protected and secured by the constitution and laws of the United States, and Club By-laws.

62.  Defendants' objectionable conduct includes, but is not limited to, the following:

A. Unnecessarily and unreasonably attempting to prohibit Plaintiff from taking part in regularly scheduled Club activities.

B. Unnecessarily and unreasonably attempting to prohibit Plaintiffs from membership in the Club.

C. Unnecessarily and unreasonably prohibiting Plaintiff Mahler from speaking to the players of the Club.

D. Unnecessarily and unreasonably prohibiting players of the Club from speaking to Plaintiff Mahler.

E. Defendants' unnecessary, unreasonable, and wrongful restriction of Plaintiff Mahler's rights to attend Club events and functions.

F. This trammeling of significant personal and civil rights has caused substantial personal damage to Plaintiffs.

## COUNT 5

## VIOLATION OF 42 U.S.C. 1981 EQUAL RIGHTS

63. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

64. The Civil Rights Act of 1870, 42 U.S.C. 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory... to the full and equal benefit of all laws and proceedings "

65. The United States Constitution prohibits special privileges and immunities.

66. Defendants have violated the Constitution with regard to Plaintiff so as to adversely affect his right to take part in a public event sponsored by the Club and share in the activities that are open to other members of the community in the following ways:

A. Affording other community members' preferential treatment by allowing them to take part in Club activities, and not allowing a community member, such as Plaintiff, to partake.

B. Affording community members' preferential treatment in that their Table Tennis activities are monitored and scrutinized far less than is the activity of a community member such as Plaintiff.

C. The subverted management of the Club, whereby a small number of Defendants promulgate rules and regulations governing the Club, affords preferential treatment to community members because a community member such as Plaintiff is unable to participate in the formulation of the rules and regulations. Community members are not even allowed to observe management meetings.

D. Community members are frequently permitted to attend Club events and functions while Plaintiff is prohibited from attending these events and functions.

E. As a result of the unauthorized management of the Club, Defendants have substantial control over when and where they hold events and functions. Plaintiffs have authorized and corporate control which Defendants have attempted to subvert.

K. Defendants have systematically enforced adverse "non-existent" rules and regulations against Plaintiff as a community member, but not against other community members. The "non-existent" rules and regulations include, but are not limited to, the following:

　　1. Preventing Plaintiff from calling a Club meeting.

　　2. Preventing Plaintiff from utilizing Club equipment that would enable community members to exercise at the Club.

67. Defendants conspired and utilized a personal and special connection, not available to Plaintiff, with Law Enforcement personnel to deny, abrogate, and violate the constitutionally guaranteed civil rights of the Plaintiffs.  Defendants planned these actions in conjuction with a monetary reward, payoff, and kickback scheme.

68. Defendants' violations of Plaintiffs' rights to the full and equal benefit of all laws and afforded community members, special privileges and immunities, have caused substantial personal damage to Plaintiffs.

## Count 6

### Negligence

69.  Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

70.  Defendants had a duty to Plaintiff to not interfere with a suitable location to participate in the events and functions of the Club, not to interfere with Plaintiff's ability to play at the Salem Senior Center, and not intimidate, and embarrass Plaintiffs.

71.  By reason of Defendant's emotional abuse of Plaintiffs, Plaintiffs suffered discomfort, embarrassment, humiliation, and emotional distress.

72.  Plaintiff avers that Defendants' breach of duty and negligence was a proximate cause of injury and damage to Plaintiff that resulted from their actions and emotional abuse of Plaintiffs.

### Count 7

### Gross Negligence

73.  Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

74.  Plaintiffs aver that Defendants breached their duty to him by wantonly and intentionally damaging Plaintiff as a result of their actions and abuse of Plaintiffs.

75.  As a result of the gross carelessness and wanton negligence of the Defendants, Plaintiffs suffered great pain of body and mind and mental anguish, all to their, the said Plaintiff's loss and damage.

76.  Plaintiffs aver that Defendants' breach of duty, wanton conduct, and gross negligence was the proximate cause of damage to them as set forth above.

### Count 8

### VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

77. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

78. Documents and information obtained, organized, evaluated, analyzed and delivered by Plaintiffs to Defendant Bednarz, and Defendants Does 1-20, are the intellectual property of Plaintiffs.  Defendant, Bednarz and Defendants Does 1-20 utilized Plaintiff's intellectual property to slander, libel, defame, intimidate, retaliate against, and intentionally inflict emotional distress upon, Plaintiffs. Plaintiffs, however, were not justly compensated for the public use of their intellectual property principally because the Defendants affirmatively misrepresented and concealed the total underlying agenda of Defendants. The Defendants' wrongful actions violated the "just

compensation" clause of the Fifth Amendment to the United States Constitution.

## Count 9

### FOURTEENTH AND FIFTH AMENDMENT CAUSE OF ACTION

79. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

80. All the above-mentioned actions deprived Plaintiff of his liberty interest in speech and expression under the 1st and 9th Amendments to the United States Constitution as applied to the states by and under the 14th and 5th Amendments to the United States Constitution.

81. These deprivations of the freedom of speech and expression against Plaintiffs were effected under color of law.

82. Defendants attempted to enforce, and enforced, policies that are not authorized by Federal, State, or Club By-laws.

83. Defendant's unauthorized policy implementation resulted in all the above-mentioned actions, depriving Plaintiffs of their substantive and procedural due process and equal protection rights under the 14th and 5th Amendment to the United States Constitution.


## Count 10

### BREACH OF FIDUCIARY DUTY

84. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

85. The relationships between Plaintiffs and the Defendants were special and confidential relationships, relationships of trust and fiduciary relationships at common law.

86. Certain fiduciary obligations arose from these relationships as a matter of law.

87. As fiduciaries, the Defendants owed Plaintiffs:

  A. the commitment to deal fairly and honestly,

B. the duty of loyalty and good faith, and

C. integrity of the strictest kind.

88. The Defendants, however, breached their fiduciary duties to Plaintiffs by, *inter alia*: (i) not renewing the Club's United States Table Tennis Association membership and liability insurance policy; (ii) not relinquishing Club funds for deposit into the Club's bank account; (iii) and failing to retain adequate Club records.

89. The Defendants willfully and wantonly breached the fiduciary duties they owed to Plaintiffs or, at the very least, committed these breaches with conscious indifference and reckless disregard of Plaintiff's rights and interests.

### Count 11

### CONSPIRACY

90. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

91. Each of the Defendants acted individually and in concert with their group and with each other, either expressly or tacitly, to participate in a plan that was designed in part to commit the tortious acts referred to herein.

### COUNT 12

### CONVERSION

92. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

93. As a result of Defendants' failure and refusal to account for, acknowledge, and return to Plaintiffs and community members, funds, equipment, and intellectual property, Defendants have willfully and wrongfully misappropriated and converted the value of the funds, equipment, and intellectual property, and its public benefits into Defendants' own property.

94. Defendants have not accounted for or returned the value of Plaintiffs' funds, equipment, and intellectual property.

95. As a result of Defendants' wrongful acts and omissions, Plaintiffs have been injured and demand judgment against the Defendants jointly, severally and/or in the alternative on this cause of action for, amongst other things: (a) equipment; (c) full restitution in the value of all monies, profits, and/or benefits derived by Defendants' use of equipment and funds; (d) equitable disgorgement of all said monies, profits, and/or benefits derived by Defendants' exploitation of funds, equipment, and intellectual property; and (e) other damages in an amount in excess of the jurisdictional limits of this Court and to be determined at the trial herein, together with interest, exemplary or punitive damages, attorney's fees and costs of this action.

96. Plaintiffs are, and at all times relevant herein were, the owners of, or entitled to immediately possess, the following items of property:

a. six (6) table Tennis tables (four Stiga and two Butterfly),

b. six (6) Table Tennis nets,

c. one (1) wood locking storage box,

d. ten (10) sections of cardboard barriers,

e. all intellectual property associated with the Salem Table Tennis Club, Inc. and Salem Table Tennis Club.

f. all other property rights associated with, but not limited to rights of ownership, possession, sale or exchange, borrow or lend, or otherwise touch, use, otherwise place into custody of others who would, touch, use, examine, sale or exchange, borrow or lend or otherwise cause to be taken from custody of rightfully entrusted possession of Plaintiffs.

97. Defendants wrongfully interfered with Plaintiff's interests in the above-described property by undertaking the following acts:

1. Defendants stole, and allowed to be stolen, six Table Tennis Tables belonging to Plaintiffs that had been secured at the Salem Senior Center, in Salem, Oregon at the behest of the Senior Center Administrator.

2. Defendants intentionally cut a cable, owned by Plaintiffs, that secured the Table Tennis tables at the Salem Senior Center and stole the cable and padlocks.

3. Defendants then transported said Table Tennis equipment to a secret venue only known to Defendants and unknown to Plaintiffs.

98. As a result of Defendant's acts of conversion, Plaintiff has been damaged in the sum or sums to be proven at trial, including all compensatory damages.

99. In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiffs, and Plaintiffs are therefore entitled to punitive damages according to proof at the time of trial.

## COUNT 13

### DEMAND FOR AN ACCOUNTING

100. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

101. The Defendants knew, or should have known, of the existence of corporate records that indicate the location of Plaintiff's funds, equipment, and intellectual property. Plaintiffs have demanded that the Defendants reveal their records regarding same and that a just and fair accounting be made.

102. Defendants have failed to provide said records and have failed to comply with Plaintiffs' demands.

## Count 14
### Due Process Clause, Fourteenth Amendment

103. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

104. Defendant's refusal to grant a hearing before or after denial of an accommodation violates the Due Process Clause of the Fourteenth Amendment to the Constitution. The Due Process Clause forbids denying a person liberty or property without due process of law. The privilege and right of a qualified person to take part in the events and functions of the Club, fall within the "liberty" and "property" of the Due Process Clause. The Defendant's denial is based on the "opinion" of Defendants. In adopting that opinion, Defendants have concluded that it disagrees with the facts stated by Plaintiff. If the Defendants believe that the facts of Plaintiff's facts are in dispute, they must provide a fair evidentiary hearing so that Plaintiffs can contest the errant unilateral decision by the Defendants. Despite Plaintiff's request for a hearing, the Defendants refused to grant one.

105. As a direct and proximate result of the wrongful acts of the Defendants, the Plaintiffs suffered intimidation, embarrassment, slander, and defamation, loss of Club property, discomfort, and violation of their civil rights.

106. Defendant's actions violate Plaintiff's due process rights, procedurally and substantially.

107. Defendants violated Plaintiff's right to procedural due process. The 5th Amendment Due process rights as applied to the states via the 14th Amendment, protects against the "Deprivation of Life, Liberty, or Property Interests Without Due Process of Law." Defendants have denied Plaintiffs, the right to have their property safely secured at the Salem Senior Center, the right to file an appropriate theft report with the City of Salem Police Department, without a hearing or notice of their actions.

### Count 15
### Equal Protection Clause, Fourteenth Amendment

108. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

109. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1.

110. Defendants have violated Plaintiffs rights to Equal Protection as guaranteed by the United States Constitution.  Exclusion of Plaintiffs from the events and functions of the Club is without rational basis and in violation of his rights under the Equal Protection Clause.

111. As a direct and proximate result of the wrongful acts of the Defendants, the Plaintiffs suffered intimidation, embarrassment, loss of their personal property, discomfort, and violation of their civil rights.

### Count 16
### Intimidation

112. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

113. Plaintiffs were intimidated, embarrassed, libeled, defamed, and humiliated by the actions of the Defendants, and have suffered actual damages.

### Count 17
### Declaratory Judgment

114. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

115. For all of the above-mentioned reasons, there exists an actual, substantial and immediate controversy within the Court's jurisdiction, which controversy is the result of Defendants' conduct and which controversy can be redressed by a judicial decision in favor of

Plaintiffs.  Thus, the Court may properly declare the constitutional and civil rights of Plaintiffs in respect of this action.

**Count 18**

**Americans with Disabilities Act**

116. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

117. Plaintiff Mahler is protected by the ADA as he is a person with a "disability" as that term is defined by the statute.  42 U.S.C. § 12102(2)(a).  Plaintiff Mahler has a "physical or mental impairment that substantially limits one or more of [his] major life activities." Id.

118. A purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  Among its findings, Congress declared that:

[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and no productivity.

119. The defendants have violated Title II and Title III of the Americans with Disabilities Act ("ADA") which prohibits discrimination in and denial of services, benefits, and programs to people with disabilities by public entities.

120. Defendants' failure and refusal to accommodate Plaintiff Mahler's disability by allowing him to attend Table Tennis Club events and functions served to discriminate against Mahler in that Mahler is accorded certain rights under the ADA and such discrimination, based upon disability, constitutes a violation of Mahler's civil rights.

121. Defendants have violated the ADA and Plaintiff Mahler's civil rights by:

  a.   Refusing to provide Plaintiff Mahler's membership in the Table Tennis Club;

  b.   Refusing to allow Plaintiff Mahler to attend Table Tennis Club events and functions.

122. As a direct and proximate result of the wrongful acts of the Defendants, the Plaintiff Mahler suffered violations of his civil rights afforded to him by the Americans with Disabilities Act.

123. Defendants are in violation of the ADA, 42 U.S.C.  The ADA requires that all persons who offer qualifications related to performance thereby granting certain privileges and rights to do so in a place and manner accessible to persons with disabilities, and the ADA prohibits discrimination against individuals with disabilities by public entities such as the Table Tennis Club, City of Salem, and the Salem Police Department.  In addition, Defendants have violated Plaintiff Mahler's right to Equal Protection as guaranteed by the United States Constitution by discriminating against him as a member of a protected class and excluding him from public benefits.  Also, Defendants have violated Plaintiff Mahler's rights under the Due Process Clause by denying him a hearing on his request for review and accommodation, since the Defendants denials are based on disputed facts.

124. Plaintiff will suffer irreparable harm if he is denied the reasonable accommodation that he needs to have an equal opportunity with non-disabled individuals to attend Table Tennis Club events and functions.  Defendants, on the other hand, will suffer no harm.  Any delay in his ability to have an equal opportunity to partake in the Table Tennis Club events and functions jeopardizes Plaintiff Mahler's ability to begin and continue his training and practice.  In contrast, Defendants are not harmed by allowing Plaintiff Mahler to attend events, functions, and the accommodation he

requests, especially in light of the fact that the accommodation is simple, cost free, and easy to implement.

125. The ADA specifically contemplates that temporary injunctive relief is appropriate to remedy acts of discrimination against persons with disabilities.  It incorporates the provisions of 42 U.S.C. § 2000a-3, stating that, whenever any person has engaged, or there are reasonable grounds to believe a person is about to engage, in a prohibited act, a permanent or temporary injunction, or a restraining order is an appropriate remedy for the aggrieved party.  42 U.S.C. § 12188(a)(1).

126. Defendants have violated Title II of the ADA.  As a "public entity" 42 U.S.C. § 12131(1)(B), the provisions of Title II of the ADA strictly prohibit Defendant's discriminatory practices.  Title II, which also took effect on January 26, 1992, generally prohibits discrimination on the basis of disability by public entities.  42 U.S.C. § 12132.  Section 202 of Title II provides that: no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.

127. As a public entity, the Table Tennis Club, the City of Salem, and the Salem Police Department may not discriminate against Plaintiff Mahler as an individual with a disability, nor deny him effective participation in Table Tennis Club events or functions.

128. On July 26, 1991, the Attorney General of the United States promulgated regulations implementing Title II of the ADA.  See 28 C.F.R. Part 35 (56 Fed.  Reg. 35694-35723).  The Title II regulations mandate that:

(6) A public entity may not administer a "……certification program" in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of certified

entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

129. The preamble to the Title II regulations makes clear that section 28 C.F.R. § 35.130(b)(6) and (7) (56 Fed. Reg. 35718-19) applies to public entities which provide examinations, despite the fact that such entities are already covered by Title III of the ADA. 56 Fed. Reg. 35702 (Preamble to Section 35.130, "General Prohibitions against Discrimination"). The preamble notes that, pursuant to Title II, "a public entity offering an examination must ensure that modifications of policies, practices, or procedures or the provision of auxiliary aids and services furnish the individual with a disability an equal opportunity to demonstrate his or her knowledge or ability." Id.

130. Plaintiff Mahler has met the requisite eligibility requirements to take part in any certification program, event, or function of the Table Tennis Club. Defendants have refused to grant accommodations and access necessary to make the Table Tennis Club program, events, and functions accessible to him as a person with a disability. Accordingly, Defendants have discriminated against Plaintiff Mahler. This denial has occurred because of Plaintiff Mahler's disability, in violation of Title II of the ADA, 42 U.S.C.

131. As a direct and proximate result of the wrongful acts of the defendants, the Plaintiff Mahler suffered intimidation, embarrassment, loss of his personal property, discomfort, and violations of his civil rights.

## Count 19

### EQUAL PROTECTION UNDER THE LAW

132. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

133. As citizens of Oregon and the United States of America, Plaintiffs have the right to Equal Protection under the law.  Equal protection demands that "individuals similarly situated must be treated the same." Defendants have caused Plaintiffs to be treated differently, by creating and enforcing a deliberate scheme to prohibit Plaintiffs their property, their ability to file a theft report, and their choice in their attempts to retrieve their property.  Defendants conspired, under the color of law, to arrange preferential treatment for them by utilizing the voice and authority of the Salem Police Department, via good friend and fellow Rotarian Gembala, thereby violating Plaintiff's rights to equal protection under the law.

134. Plaintiff Mahler, because of the intentional and willful conspiracy of Defendants, have suffered an economic loss and loss of ability to participate in his chosen sport of Table Tennis.

135. Plaintiffs have suffered severe and extreme emotional distress; both intentionally and negligently inflicted upon them by all Defendants.  This emotional distress was brought upon Plaintiff for no other reason than to foster the illegal, non-competitive activities of Defendants.

**Count 20**

**COMMON LAW FRAUD**

136. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

137. The actions of all of the Defendants either individually or collectively constitute Common Law Fraud.  The Plaintiffs have been harmed by the frauds perpetrated upon them by all of the Defendants and are entitled to recover damages jointly and severally from all of the Defendants for such fraud.  The Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs from all Defendants, jointly and severally as a result of the fraudulent conduct of the Defendants and to punish the Defendants for their wrongdoing.

## Count 21

### TORTUOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

138. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

139. The actions of all of the Defendants either individually or collectively constitute Tortuous Interference with a Business Relationship.  The Plaintiffs have been harmed by this Tortuous Interference with a Business Relationship by all of the Defendants and are entitled to recover damages for such tortuous interference jointly and severally from all Defendants together with attorney's fees and costs.

## Count 22

### CIVIL RACKETEERING

140. Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

141. The actions of all of the Defendants both individually and collectively, as set forth in this Complaint and in the Plaintiffs separate Civil Rico Statement which is incorporated into this Complaint by reference, should the Court request, together with violations of U.S.C. Title 18, §1962 and 1964 (RICO) constitute Civil Racketeering, which has damaged the Plaintiffs in their business affairs and in the value of the Salem Table Tennis Club (Inc.).  The Plaintiffs have been harmed by the Civil Racketeering committed by all of the Defendants acting as a part of the RICO Enterprise and are entitled to recover damages for such Civil Racketeering jointly and severally against all of the Defendants together with treble damages as provided by statute, attorneys' fees, and costs.

### ARGUMENT

It would be absolutely wrong to allow Defendants to censor discussion on certain "CLUB POLITICAL ISSUE'S" and obtain preferential Law Enforcement treatment. Bernard Bednarz's family is one of the largest and wealthiest commercial real property owners in Marion County.  The Bednarz family has a virtual monopoly on downtown Salem, Oregon, and

for Bernard Bednarz to be allowed to **"CENSOR"** which issues the Salem Table Tennis Club are viewed by its players, exert Law Enforcement pressure, intimidation, harassment, and influence on citizens due to their "connections" with local law enforcement, and to be allowed to steal property because he is afforded preferential treatment by local officials due to their fraternal connections, would be disastrous to "Political and Club" debate and discussions and an affront to the principles of free speech and civil rights on which this country was founded. Small independent "Clubs" with non-mainstream ideals and goals would have their ideals censored from the public just by the Bednarz family's sheer wealth and monopoly. The Salem Table Tennis Club, (Inc.) is the only one in town.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a.   As compensatory damages, the sum of $100,000.00;

b.   As punitive damages, the sum of $250,000.00;

c.   The costs and disbursements of this action;

d.   For an accounting;

e.   Such injunctive relief as the Court deems appropriate;

e.   All future attorney fees incurred in prosecuting this action pursuant to U.S.C. Sect. 1988;

f.   Such other relief as the Court deems proper and just;

g.   For attorneys' fees; and

h.   For the cost of this action.

Robert E. Mahler
P.O. Box 7658
Salem, OR 97303
(503)589-4878

Dated 4/20/06